FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

MAR 1 4 2005

FOR THE DISTRICT OF HAWAII

at ___ o'clock and 47 min. ___ M.
WALTER A.Y.H. CHINN, CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00586 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES H. KOSI, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The Court heard the United States' Motion on February 4, 2005.

Assistant U.S. Attorney Wes Reber Porter appeared at the hearing on behalf of the

United States; Alvin K. Nishimura, Esq., appeared at the hearing on behalf of

Defendant. After reviewing Defendant's motion and the supporting and opposing

memoranda, the Court DENIES Defendant's Motion to Suppress Evidence.

## BACKGROUND

Defendant Charles Kosi is being prosecuted for possessing while on

probation methamphetamine and a firearm, both of which were found in a

backpack he allegedly discarded during a police chase. The two-count indictment

filed against Defendant on December 17, 2003, charges him with the following:

possession with intent to distribute methamphetamine in violation of 21 U.S.C.


EXHIBIT "A"

§ 841(a)(1); being a felon in possession of a firearm in violation of 18 U.S.C.
§ 922(g)(1).

Defendant filed a motion to suppress this evidence on October 22,
2004, claiming that the backpack was searched unjustifiably and without a warrant
in violation of his Fourth Amendment rights.  On November 19, 2004, the United
States filed a motion to strike Defendant's motion to suppress based on lack of
standing.  The government claimed that Defendant abandoned the backpack, and
therefore lacked standing to assert a Fourth Amendment challenge to its search.
The United States has filed no written response to Defendant's motion to suppress;
Defendant filed no written response to the United States' motion to strike.  The
United States has requested that its memorandum in support of the motion to strike
Defendant's motion to suppress be considered by the Court as a memorandum in
opposition to Defendant's motion as well.

The Court heard the United States' motion to strike on December 7,
2004.  Assistant U.S. Attorney Wes Reber Porter appeared at the hearing on behalf
of the United States; Alvin K. Nishimura, Esq., appeared at the hearing on behalf
of Defendant.  In an order issued on December 10, the Court denied the
government's motion to strike, because the parties presented conflicting versions

of events that raised an issue of fact as to whether the backpack had actually been abandoned.

At the February 4 hearing on Defendant's motion to suppress, Defendant testified that on November 21, 2003, he went to Lanipoko Park Beach with his girlfriend and his son. When the time came for his girlfriend to go to work, he decided to drive separately in his car, a green Honda Accord, to meet her there. So, Defendant testifies, he drove down Honoapiilani Highway and turned onto Prison Street. Defendant testified that he didn't notice a police officer behind him until he was half way down Prison Street. He testified that he then reached a stop sign at the intersection with Front Street, and decided the police officer wanted to pass him, so pulled slightly to the side. He said that he then drove down Front Street about 100 yards and stopped. At this point, he said he wondered why the police officers were behind him, and decided to place his backpack beside his car. He did this, he testified, because he believed the officers wanted to "shake [him] down" and "fight" with him. He testified that the officer repeatedly told him to get on the ground, despite his attempts to explain that he should not because of a previous surgery. He said the officer then hit him on the back with a baton and tackled him to the ground. One officer put him in a headlock, he said, and another

was on top of him. Kosi testified that at all times he obeyed traffic laws, and that

he never denied ownership of the backpack.

The police officers who testified at the hearing presented a

substantially different scenario. Maui Police Officer Joshua Mederros testified

that on November 21, 2003, he was driving with a field training officer when, at

about 2:00 p.m., a call came over the radio from dispatch regarding a reckless

driver on Honoapiilani Highway. The driver was headed northbound in a green

Honda Civic toward Lahaina in the Oluwalu area, passing vehicles in across the

double-solid, no-passing line as well as on the right-hand shoulder. The officer

then testified that a second call came over the radio, explaining that a person

driving behind the dangerous driver had called the police to tell them that the

suspect had just passed a police car driving in the opposite direction in the area

around Puamana Park. Officer Mederros identified the officer in the police car

that the suspect passed as Officer Ryan Pursley.

Officer Mederros testified that, after receiving this call, he pulled

over to the side of the highway to wait for the suspect to approach. There were no

opportunities for the suspect to have exited the highway between the last siting of

the suspect and Officer Mederros' position, he said. He stated that when he saw a

green Honda pass his car, he pulled onto the road and immediately activated his

4

lights and sirens in an attempt to stop the vehicle. He testified that he had not seen any similar looking green Honda cars on the road. The car did not stop, however, and continued driving north on the highway for about half a mile. At that point, the vehicle made a left on Prison Street and continued driving despite the lights and siren. The officer testified that he could see the driver of the vehicle, a male, rummaging around in the front seat area of the car. He testified that the vehicle then made another left turn from Prison Street onto Front Street. At this point, the officer's car was approximately 10 feet from the suspect's car. Officer Mederros stated that, when the suspect made this turn onto Front Street, he disregarded a stop sign and sped past children outside an elementary school.

The driver then made another left turn, from Front Street into a parking lot on Shaw Street. In the parking lot, the driver made a semi-circular right turn as he slowed down, and shortly thereafter he completely stopped the car in the corner of the parking lot. While following at about 10 feet away, Officer Mederros observed a small brown bag drop to the ground from the area of the driver's side door, he testified. He said that, from his vantage point on the side of the passenger's side door, he saw the bag fall underneath the vehicle and that the vehicle subsequently ran over it. He testified that there were no other persons nearby who could have dropped the bag, and that the bad was not there before the

suspect's car entered the parking lot. The vehicle finally stopped about 30 feet from the bag, he said.

Maui Police Officer Ryan Pursley also testified at the hearing. Officer Pursley testified that while he was driving in the area of Puamana Beach Park, he was informed that an anonymous caller had contacted the police on a cellular phone to explain that this caller was driving behind the reckless vehicle, and that both the caller and the reckless driver had passed a police car traveling in the opposite direction. He stated that he communicated with Officer Mederros after it passed him, and informed them of his position and direction. He testified that there were no points at which the suspect could have exited the highway within the tenth of a mile between his position and Officer Mederros' position. Moreover, he said that he saw no similar cars on the highway.

Officer Pursley explained that he joined the call at about 2:04 p.m., and met the officers at the parking lot after Defendant was stopped. While he was in the parking lot, two civilians presented him with a backpack, he said. Officer Mederros testified that this backpack was the bag he saw dropping from the driver's side of Defendant's car. Officer Pursley testified that he twice asked Defendant Kosi if the backpack was his, but that on both occasions Defendant denied ownership of the bag. He said that, after Defendant denied ownership of

6

the bag, the officers found that the bag contained a firearm, ammunition, crystal methamphetamine, marijuana, and court documents bearing Defendant's name.

## DISCUSSION

Defendant argues that when an arrest or seizure is effectuated without a warrant, the government bears the burden of proving through sworn testimony that the action was legally justified based on the facts and circumstances known to the arresting officers at the time.  (Def. Mot. To Suppress at 4 citing Hayes v. Florida, 470 U.S. 811 (1985); Brinegar v. United States, 338 U.S. 160, 175 (1949); United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980).)  Defendant maintains that the government has shown neither probable cause for an arrest nor justification for a Terry stop, because the officers did not observe any traffic violations by Defendant, and Defendant's vehicle was a Honda Accord, while the anonymous caller described a Honda Civic.  Moreover, to rely on the anonymous tip for as a basis for reasonable suspicion, Defendant argues that the government must show specific accompanying indicia of reliability.  (Def. Mot. To Suppress at 5 citing Florida v. J.L., 529 U.S. 266 (2000).)

At the outset, the Court finds that Defendant's version of events is not credible.  Defendant's story that he only placed the backpack outside of the car, with the intention of retrieving it, because he believed the officers wanted to fight

with him, defies logic and the typical patterns of human behavior. Moreover, the Court finds equally unconvincing Defendant's argument that he did not run the stop sign and flee from the officer, but rather that he attempted to pull over so the officer could pass – and then inexplicably continued to drive after the officer did not in fact pass him. Likewise, the Court finds it implausible that Defendant did not notice the police officer's lights and siren behind him until he had traveled down Prison Street. Further, the Court does not believe other assertions by Defendant, including his claim that he did not deny ownership of the backpack. The officer's testimony in this regard was credible.

The Court now turns to Defendant's legal arguments. The Fourth Amendment to the United States Constitution establishes that the government may not violate "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The United States Supreme Court held in <u>Terry v. Ohio</u>, that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. 1, 30 (1968). The standard of "reasonable suspicion" is a less stringent than that of probable cause and requires considerably less than a showing of preponderance of the evidence. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123-124 (2000). However, the

Fourth Amendment does require objective justification for making the stop. Id.; United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, the officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. Wardlow, 528 U.S. at 124.

Defendant correctly notes that an anonymous tip can only form the basis for reasonable suspicion if it is accompanied by specific indicia of reliability. Florida v. J.L., 529 U.S. 266, 270-271 (2000). However, in the instant case, the caller was describing his present sense impression of the allegedly reckless driver, and the officers were able to partially confirm the caller's account when they confirmed the location of the drivers as related to Officer Pursley. The Court finds that, under the circumstances, this was a sufficient indicator of reliability. Moreover, the caller described a particular make (Honda) and color of car (Green) in a specific location. The Court finds that the tip was sufficiently specific to enable the officer's to act on it and attempt to make an identification.

Defendant touts as evidence of bad faith the fact that the caller described the suspect's car as a green Honda Civic, while Defendant was pulled over while driving a green Honda Accord. The Court is not greatly impressed by this factual distinction. First, the Court recognizes that, as the officers were no doubt aware, lay-witnesses' tips are not always perfectly precise; the Court is not

9

convinced that, simply because the caller referred to the suspect's car as a green Honda Civic, this proves that the caller was not referring to Defendant's green Honda Accord. Second, given the relative positions of the police officer's car and Defendant's car, it would likely have been difficult for the officer to determine whether the car was a Honda Civic or a Honda Accord before initiating the traffic stop. Defendant was driving straight toward the officer's car, and thus the officer was initially unable to view the sides or rear of the car. This would have greatly obscured the officer's ability to observe the differences in silhouette and markings that would differentiate a green Honda Accord from a green Honda Civic.

Thus, the Court finds that the anonymous call does serve as a reasonable justification for an investigative stop. Moreover, the officers received additional reasonable justification to stop Defendant after he fled from them. The Supreme Court has held that flight alone may constitute reasonable justification for an investigative stop, depending on the circumstances. As the court explained:

> Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law

> enforcement officers where none exists. Thus, the
> determination of reasonable suspicion must be based on
> commonsense judgments and inferences about human
> behavior.

Wardlow, 528 U.S. 119, 124-125 (2000).

Finally, the Court dismisses Defendant's argument that he did not abandon his backpack, and therefore the search of the backpack was unlawful. As aforementioned, the Court finds Defendant's factual scenario to be wholly unbelievable. Taking the officer's account to be true, the Court finds that Defendant clearly abandoned the backpack.

The warrantless searches of abandoned property are not prohibited by the Fourth Amendment. Abel v. United States, 362 U.S. 217, 241 (1960). The Ninth Circuit has defined abandonment as occurring when a "person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." United States v. Jackson, 544 F.2d 407, 409 (9th Cir. 1976). This is primarily a question of intent, which can be proved through circumstantial evidence. Id. Denial of ownership and physical relinquishment of property are two factors that strongly weigh in favor of a finding of abandonment. United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986). In the instant case, Defendant relinquished physical possession of the backpack

when he threw it from the window of his still-moving car. Defendant also denied ownership of the backpack twice when questioned by officers. These facts are sufficient to evidence a clear intent on the part of Defendant to abandon the backpack.

Defendant attempts to rebut this fact with the argument that his abandonment of the property was involuntary. Indeed, it is true that "an abandonment that results from Fourth Amendment violation cannot be voluntary." United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000). However, the Ninth Circuit's holding that abandonment of property in response to a police investigation does not automatically render the relinquishment involuntary. United States v. Gilman, 684 F.2d 616, 620 (9th Cir. 1982). "There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed." Id. As this Court has found that the officers' investigative stop did not violate Defendants' Fourth Amendment rights, the Court cannot say that the abandonment of Defendant's backpack occurred in response to any Fourth Amendment violation.

Thus, the Court finds that the officers had reasonable justification for conducting an investigatory stop of Defendant, and that Defendant subsequently

abandoned his backpack, ending any Fourth Amendment rights against warrantless searches and seizures that he would have regarding the backpack.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Suppress Evidence.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii,    MAR 1 4 2005          .

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

United States of America v. Charles H. Kosi, Jr., CR. No. 03-00586 DAE;
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE