ORIGINAL

MARK R. ZENGER, #3511
RICHARDS & ZENGER
P.O. Box 3966
Lihue, Hawaii 96766
Phone: (808) 632-0723

Attorney for Defendant
CHARLES H. KOSI, JR.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 02 2006

at 4 o'clock and 21 min. PM
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES H. KOSI, JR.,<br><br>Defendant.<br>_____ | ) CR. NO. 03-00586 (DAE)<br>)<br>) **NOTICE OF MOTION;**<br>) **MOTION OF DEFENDANT**<br>) **CHARLES H. KOSI, JR.,**<br>) **TO WITHDRAW GUILTY**<br>) **PLEA ENTERED ON APRIL**<br>) **5, 2005; MEMORANDUM**<br>) **IN SUPPORT OF MOTION;**<br>) **DECLARATION OF MARK R.**<br>) **ZENGER; EXHIBIT "A";**<br>) **CERTIFICATE OF SERVICE**<br>) |

### NOTICE OF MOTION

TO:  WES PORTER, ESQ.
     Assistant United States Attorney
     District of Hawaii
     Room 6-100, PJKK Federal Bldg.
     300 Ala Moana Blvd., Box 50183
     Honolulu, Hawaii  96850

     Attorney for Plaintiff
     UNITED STATES OF AMERICA

     PLEASE TAKE NOTICE that the following "MOTION OF

DEFENDANT CHARLES H. KOSI, JR., TO WITHDRAW GUILTY

SCANNED          EXHIBIT C

PLEA ENTERED ON APRIL 5, 2005" will be presented for hearing before the Honorable David A. Ezra, Judge of the above-entitled Court, in Courtroom 435 located in the Federal Building, 300 Ala Moana Boulevard, Honolulu, Hawaii on Friday, March 3, 2006 at 1:30 p.m., of said day, or as soon thereafter as counsel may be heard.

DATED:  Lihue, Kauai, Hawaii, March 2, 2006.

MARK R. ZENGER
Attorney for Defendant
CHARLES H. KOSI, JR.

NOTICE OF MOTION;  United States District Court,
District of Hawaii, U.S. v. Kosi, CR. NO. 03-00586 DAE.

MARK R. ZENGER, #3511
RICHARDS & ZENGER
P.O. Box 3966
Lihue, Hawaii 96766
Phone: (808) 632-0723

Attorney for Defendant
CHARLES H. KOSI, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 03-00586 (DAE) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MOTION OF DEFENDANT** |
| | ) | **CHARLES H. KOSI, JR.** |
| vs. | ) | **TO WITHDRAW PLEA OF** |
| | ) | **GUILTY ENTERED ON** |
| CHARLES H. KOSI, JR. | ) | **APRIL 5, 2005** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION OF DEFENDANT CHARLES H. KOSI, JR.**
**TO WITHDRAW PLEA OF GUILTY ENTERED ON APRIL 5, 2005**

COMES NOW Defendant CHARLES H. KOSI, JR.

(hereinafter "MR. KOSI") by and through his court-

appointed attorney, Mark R. Zenger, and moves this

Honorable Court to withdraw his guilty plea entered

herein on April 5, 2005.

This motion is made pursuant to, *inter alia*, Rule

11 of the Federal Rules of Criminal Procedure and the

Ninth Circuit Court of Appeals recent decision in

United States v. Davis, 485 F.3d 802 (9th Cir. 2005).

This motion is supported by the records and files herein, the attached Memorandum in Support of Motion, the Declaration of Mark R. Zenger dated March 1, 2006 and Exhibits "A" attached thereto (hereinafter collectively referred to as the "Zenger Declaration") and any and all evidence adduced and arguments presented at a hearing on this Motion.

DATED:  Lihue, Kauai, Hawaii, March 2, 2006.


                              _____
                              MARK R. ZENGER
                              Attorney for Defendant
                              CHARLES H. KOSI, JR.


MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW
PLEA OF GUILTY ENTERED ON APRIL 5, 2005; U.S. v.
Charles H. Kosi, Jr., Cr. No. 03-00586 DAE.

2

MARK R. ZENGER, #3511
RICHARDS & ZENGER
P.O. Box 3966
Lihue, Hawaii 96766
Phone: (808) 632-0723

Attorney for Defendant
MARTIN JONES (01)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 03-00586 (DAE) |
| | ) | |
| Plaintiff, | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES H. KOSI, JR. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the following persons via facsimile and hand delivery on the date shown below.

WES PORTER, ESQ.
Assistant United States Attorney
District of Hawaii
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850

Facsimile No: (808) 541-2958

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED:  Lihue, Kauai, Hawaii, March 2, 2006.

MARK R. ZENGER

CERTIFICATE OF SERVICE;  United States District Court,
District of Hawaii, U.S. v. Charles H. Kosi, Jr., CR.
NO. 02-00586 DAE.

2

MARK R. ZENGER, #3511
RICHARDS & ZENGER
P.O. Box 3966
Lihue, Hawaii 96766
Phone: (808) 632-0723

Attorney for Defendant
CHARLES H. KOSI, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00586 (DAE) |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION** |
| vs. | ) | |
| | ) | |
| CHARLES H. KOSI, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

**I.     FACTUAL BACKGROUND.**

The facts relevant to this memorandum in support of

the "MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO

WITHDRAW HIS GUILTY PLEA" (hereinafter referred to as

the "Motion to Withdraw Plea") are contained within the

DECLARATION OF MARK R. ZENGER dated March 1, 2006 and

Exhibit "A" attached thereto (hereinafter collectively

referred to as the "Zenger Declaration").  The Zenger

Declaration is attached hereto and incorporated by reference herein.

## II. ARGUMENTS AND AUTHORITIES.

### A. THE COURT SHOULD ALLOW MR. KOSI TO WITHDRAW HIS PLEA OF GUILTY IN THIS CASE AS IT WAS NOT ENTERED INTO KNOWINGLY AND VOLUNTARILY

As clearly set forth in the Zenger Declaration, the main thing that MR. KOSI wanted in this case after the Court issued the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" on March 14, 2005 was to be able to appeal that order to the Ninth Circuit Court of Appeals.

It is axiomatic that if a defendant has presented a fair and just reason for to withdraw his plea of guilty, the Court should grant the motion. United States v. Dominguez-Benitez 542 U.S. 74 (2004); United States v. Olano, 507 U.S. 725, 1993.

There has never been any mystery about what will happen to MR. KOSI if the Ninth Circuit does not reverse the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" -- he will serve at least 130 months in federal prison. It is equally clear what will happen

2

to MR. KOSI if and when the Ninth Circuit reverses the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" -- U.S. Kosi will be dismissed with prejudice for lack of evidence and he will be a free man.  Faced with those radically distinct and disparate outcomes, there was never any incentive for MR. KOSI to ever waive his right to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" for any reason.

Moreover, MR. KOSI's actual conduct in this case, both before and after the execution of the Memorandum of Plea Agreement, shows that MR. KOSI truly believed that nothing in the Memorandum of Plea Agreement affected his rights to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit Court of Appeals.

From the time of his November 21, 2003 arrest, he has maintained a good faith, sincere and heartfelt belief that all of the evidence against him in U.S. v. Kosi was obtained as the result of an illegal search and seizure that renders it inadmissible against him at trial.  MR. KOSI sought and received permission from

3

the Court to fire his first two attorneys because they did not see eye-to-eye with him on that point and would not do what he wanted, i.e., file a motion to suppress.

When MR. KOSI finally got counsel that would litigate the case the way that he wanted, virtually the first thing that he and his new counsel, Alvin Nishimura, Esq., did was file a motion to suppress the evidence in October 2004. When the Court issued an adverse order on that motion March 2005, MR. KOSI embarked upon an oral and written campaign with Attorney Nishimura to make sure that no matter what happened to him, his rights to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit Court of Appeals would remain unmolested.

When viewed in that light, it is clear that on April 5, 2005, when MR. KOSI executed the "Memorandum of Plea Agreement" upon advice of counsel, his stated reliance upon Attorney Nishimura's representations that doing so would not have any affect at all on MR. KOSI's rights to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit was reasonable.

Given the foregoing, the Court should allow MR.

KOSI to withdraw his plea of guilty in <u>U.S. v. Kosi</u>

because he did not enter it in an intelligent, knowing

and voluntary manner.

**B.    THE COURT SHOULD ALLOW MR. KOSI TO WITHDRAW HIS PLEA OF GUILTY IN THIS BECAUSE ATTORNEY NISHIMURA GAVE HIM BAD ADVICE AND MR KOSI HAS NOT YET BEEN SENTENCED**

In a case decided on a few months ago, the Ninth

Circuit Court of Appeals reversed and remanded the

sentencing of a defendant that moved to withdraw his

guilty plea **before** sentencing on the ground that his

attorney gave him bad advice.  The Court held that

defendants are not required by Fed. R. Crim. P.11 to

prove that they would not have pleaded guilty had

counsel advised him appropriately.  <u>United States v.</u>

<u>Davis</u>, 485 F.3d 802 (9th Cir. 2005).

In Davis, the Court essentially interpreted the

rule as requiring that such a showing would be the same

as requiring the defendant to prove the constitutional

invalidity of his guilty plea , which the rule does not

require for an attack on a guilty plea unless it is
made **after** sentencing.

Under Rule 11(d)(2)(B), formerly Rule 32(e), a
district court can permit a defendant to withdraw a
guilty plea before sentencing if the defendant can show
"a fair and just reason for requesting a withdrawal";
after sentencing, however, Rule 11(e) provides that a
guilty plea may be set aside "only on direct appeal or
collateral attack."  In Hill v. Lockhart, 474 U.S. 52
(1985), the U.S. Supreme Court held that a defendant
may bring a successful collateral attack of the
validity of a guilty plea based on ineffective
assistance of counsel if the defendant shows "that
there is a reasonable probability that, but for
counsel's errors, he would not have pleaded guilty and
would have insisted on going to trial."

In the wake of U.S. Davis, supra, all a defendant
has to show before sentencing in order to withdraw his
guilty plea is show that he received bad advice from
counsel with respect to whether to enter into the plea
or not.  Of course, whether a defendant receive "bad

6

advice" or not would have to viewed from a totality of the circumstances of the case itself.

In this case, When Attorney Nishimura advised MR. KOSI to sign the Memorandum of Plea Agreement on at the U.S. Marshall's office on April 5, 2005, he knew or should have known that doing so would prevent MR. KOSI from appealing the adverse ruling on the Motion to Suppress to the Ninth Circuit Court of Appeals "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit Court of Appeals.  Attorney Nishimura knew that the main thing that MR. KOSI wanted was to litigate that appeal.

When viewed in that context, it is clear that Attorney Nishimura should have paid special attention to and clearly and carefully explained Paragraph 13 of the Memorandum of Plea Agreement to MR. KOSI.  His not having done so was the sole and proximate cause of MR. KOSI unwittingly waiving his rights to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" and his concomitant entry of guilty plea on April 5, 2005.

The Zenger Declaration shows that MR. KOSI has more than satisfied the quantum of evidence required of MR. KOSI to withdraw his guilty plea at this stage of the proceedings in <u>U.S. v. Kosi</u> under the holding in <u>U.S. v. Davis</u>, *supra*.

## III.    CONCLUSION.

Based upon all the foregoing, MR. KOSI respectfully requests that this Honorable Court either summarily allow him to withdraw his guilty plea or, in the alternative, hold an evidentiary hearing to determine whether or not he entered it knowingly and voluntarily. prior to the time that the Court decides whether or not to sentence MR. KOSI as to the Drug Charge and dismiss the Firearm Charge.

DATED:  Lihue, Kauai, Hawaii, March 2, 2006.

_____
MARK R. ZENGER
Attorney for Defendant
CHARLES H. KOSI, JR.

MEMORANDUM IN SUPPORT OF MOTION; <u>U.S. v. Charles H. Kosi, Jr.</u>, Cr. No. 03-00586 DAE.

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00586 (DAE) |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF MARK R.** |
| | ) | **ZENGER: EXHIBIT "A"** |
| vs. | ) | |
| | ) | |
| CHARLES H. KOSI, JR. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF MARK R. ZENGER

Pursuant to 28 U.S.C. § 1746, I, MARK R. ZENGER, hereby declare as follows:

1.  I am an attorney licensed to practice law before the courts of the State of Hawaii and admitted to practice before this Court.

2.  I am counsel for Defendant DEON KOSI in the above-captioned matter ("U.S. v. Kosi") having been appointed under the Criminal Justice Act ("CJA") in late 2005.

3.  All of the information stated herein is information which I learned in my capacity as counsel for MR. KOSI in U.S. v. Kosi. If called as a witness I could and would testify to the truth of the matters

stated herein except as to those matters stated to be

true on information and belief, and as to those matters

I believe them to be true.

    4.  On December 17, 2003, MR. KOSI was indicted on

two counts by the federal grand jury in <u>U.S. v. Kosi</u>

for:

    A.  knowingly and intentionally possessing
with intent to distribute 5 grams or more
of methamphetamine, in violation of  21
U.S.C. §§ 841(a)(1) and (b)(1)(A)
(hereinafter referred to as the "Drug
Count"); and

    B.  knowingly possessing a firearm and
ammunition after having been convicted of
a crime punishable by imprisonment for at
term exceeding one year, in violation of
18 U.S.C. §§ 922(g)(1) and 924 (a)(2)
(hereinafter referred to as the "Firearm
Count").

    5.  The evidence that underlies the Drug Count is

comprised of about 26 grams of methamphetamine that was

taken from him during the execution of warrantless

search and seizure by members of the Maui Police

Department on November 21, 2003.

6.   The evidence that underlies the Firearm Count
is comprised of a Beretta pistol and ammunition
therefore that was taken from him during the execution
of warrantless search and seizure by members of the
Maui Police Department on that same date, November 21,
2003.

7.   Upon information and belief, at all times from
the date of his arrest and indictment, up until the
date herein, MR. KOSI has taken the position that all
of the evidence seized by the Government in U.S. v.
Kosi is inadmissable for use at trial against him under
the "fruit of the poisonous tree doctrine."

8.   Right after the date of his arrest and
indictment the Court appointed Deputy Federal Public
Defender William Domingo.  He withdrew.  The Court then
appointed Michael Healey, Esq. He withdrew.

9.   Upon information and belief, MR. KOSI's
disputes with his previous court-appointed attorneys
centered around MR. KOSI's position that all of the
evidence seized by the Government in U.S. v. Kosi is

inadmissable for use at trial against him under the

"fruit of the poisonous tree doctrine."

10.   The Court appointed Alvin Nishimura, Esq. to be MR. KOSI's attorney in or about August 2004.

11.   On October 22, 2004, Attorney Nishimura filed a motion to suppress the evidence that underlies the Drug Charge and the Firearm Charge from use at trial.

12.   The Government subsequently filed a memorandum in opposition to the motion to suppress.

13.   A hearing on the motion to suppress was held on February 4, 2005.

14.   The Court entered a written order entitled "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" on March 14, 2005.  A true and correct copy the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" is attached hereto and incorporated herein by reference as Exhibit "A".

15.   Upon information and belief, after the Court issued the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS," MR. KOSI told Attorney Nishimura several times orally and in writing that he wanted to appeal that order to the Ninth Circuit Court of Appeals.

4

16. On April 5, 2005, MR. KOSI was taken from the Federal Detention Center, where he has been incarcerated without bail since his the time of his 2003 arrest, and taken to the U.S. Marshall's Office to change his plea before U.S. Magistrate Kevin S.C. Chang later that day (the "Change of Plea Hearing").

17. Upon information and belief, about ten (10) minutes before the commencement of the Change of Plea Hearing, Attorney Nishimura met with MR. KOSI and, for the first time ever, displayed to him a document entitled "Memorandum of Plea Agreement" through a wire-mesh window in the attorney-client interview room.

18. Upon information and belief, while still in the attorney-client interview room, Attorney Nishimura told MR. KOSI that he should sign the Memorandum of Plea Agreement.

19. Upon information and belief, when Attorney Nishimura told MR. KOSI that he should sign the Memorandum of Plea Agreement, MR. KOSI asked Attorney Nishimura if his signing of the Memorandum of Plea Agreement would have any affect at all on MR. KOSI's

rights to appeal the "ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS," to the Ninth Circuit, and Attorney
Nishimura replied that the Memorandum of Plea Agreement
would not have any affect at all on said rights.

20. Upon information and belief, prior to placing
his signature on the Memorandum of Plea Agreement, MR.
KOSI did not have adequate time to read it to himself.

21. Upon information and belief, prior to placing
his signature on the Memorandum of Plea Agreement,
Attorney Nishimura did not read or explain its terms
and conditions to MR. KOSI.

22.    Under Paragraph 13 of the Memorandum of Plea
Agreement MR. KOSI waived his right to appeal or
collaterally attack the conviction and sentence except
on a claim of ineffective assistance of counsel and
where the Court departs upward from the United States
Sentencing Guideline ("U.S.S.G") range.

23.    Upon information and belief, within minutes
of the time that MR. KOSI signed the Memorandum of Plea
Agreement, he changed his plea in U.S. v. Kosi to

6

guilty as to the Drug Charge in return for dismissal of the Firearm Charge at sentencing.

24.    Upon information and belief, at the time that MR. KOSI changed his plea to guilty as to the Drug Charge, he did not understand that doing so would deprive him of his rights to appeal appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit.

25.    Upon information and belief, at the time that MR. KOSI changed his plea to guilty as to the Drug Charge, had MR. KOSI understood that by signing the Memorandum of Plea Agreement, he was waiving his rights to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit, there is no way that he would have signed it.

26.    In late 2005, MR. KOSI formed the belief that Attorney Nishimura was hiding something from him and was purposely not giving him copies of documents that were pertinent to his case and upcoming sentencing hearing.  He therefore requested that Attorney

7

Nishimura withdraw as his counsel in U.S. v. Kosi.  He
did so, and the Court later appointed me.

27. On Monday, February 27, 2006, I interviewed
MR. KOSI at the Honolulu FDC and went over, *inter alia*,
the Memorandum of Plea Agreement.

28. During that interview, MR. KOSI learned
seemingly for the first time ever that by signing the
Memorandum of Plea Agreement, he waived his right to
appeal or collaterally attack the conviction and
sentence except on a claim of ineffective assistance of
counsel and where the Court departs upward from the
U.S.S.G. range and that he therefore cannot appeal the
"ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the
Ninth Circuit Court of Appeals.

29.  Since MR. KOSI did not understand that the
method and manner in which he entered his plea of
guilty on April 5, 2005 prevents him from appealing the
adverse ruling on the Motion to Suppress to the Ninth
Circuit Court of Appeals, he wants to withdraw his plea
and proceed to trial by jury on the merits or, in the
alternative, enter plead of guilty to both the Drug

8

Count and the Firearm Count in such a way that allows him to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit Court of Appeals after sentencing.

30.    On March 28, 2006, I apprised Assistant United States Attorney Wes Porter of the sum and substance of the statements set forth hereinabove via telephone.  I requested that he stipulate to continue the sentencing hearing currently scheduled to occur on Friday, March 3, 2006.  However, he declined to do so.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Executed this 1st day of March 2006, at Lihue, Hawaii.

_____
MARK R. ZENGER

DECLARATION OF MARK R. ZENGER; U.S. v. Charles H. Kosi, Jr., Cr. No. 03-00586 DAE.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 1 4 2005

at ___ 8 ___ o'clock and ___ 47 ___ min ___ M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00586 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES H. KOSI, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The Court heard the United States' Motion on February 4, 2005. Assistant U.S. Attorney Wes Reber Porter appeared at the hearing on behalf of the United States; Alvin K. Nishimura, Esq., appeared at the hearing on behalf of Defendant. After reviewing Defendant's motion and the supporting and opposing memoranda, the Court DENIES Defendant's Motion to Suppress Evidence.

## BACKGROUND

Defendant Charles Kosi is being prosecuted for possessing while on probation methamphetamine and a firearm, both of which were found in a backpack he allegedly discarded during a police chase. The two-count indictment filed against Defendant on December 17, 2003, charges him with the following: possession with intent to distribute methamphetamine in violation of 21 U.S.C.



EXHIBIT "A"

§ 841(a)(1); being a felon in possession of a firearm in violation of 18 U.S.C.

§ 922(g)(1).

Defendant filed a motion to suppress this evidence on October 22, 2004, claiming that the backpack was searched unjustifiably and without a warrant in violation of his Fourth Amendment rights. On November 19, 2004, the United States filed a motion to strike Defendant's motion to suppress based on lack of standing. The government claimed that Defendant abandoned the backpack, and therefore lacked standing to assert a Fourth Amendment challenge to its search. The United States has filed no written response to Defendant's motion to suppress; Defendant filed no written response to the United States' motion to strike. The United States has requested that its memorandum in support of the motion to strike Defendant's motion to suppress be considered by the Court as a memorandum in opposition to Defendant's motion as well.

The Court heard the United States' motion to strike on December 7, 2004. Assistant U.S. Attorney Wes Reber Porter appeared at the hearing on behalf of the United States; Alvin K. Nishimura, Esq., appeared at the hearing on behalf of Defendant. In an order issued on December 10, the Court denied the government's motion to strike, because the parties presented conflicting versions

of events that raised an issue of fact as to whether the backpack had actually been abandoned.

At the February 4 hearing on Defendant's motion to suppress, Defendant testified that on November 21, 2003, he went to Lanipoko Park Beach with his girlfriend and his son. When the time came for his girlfriend to go to work, he decided to drive separately in his car, a green Honda Accord, to meet her there. So, Defendant testifies, he drove down Honoapiilani Highway and turned onto Prison Street. Defendant testified that he didn't notice a police officer behind him until he was half way down Prison Street. He testified that he then reached a stop sign at the intersection with Front Street, and decided the police officer wanted to pass him, so pulled slightly to the side. He said that he then drove down Front Street about 100 yards and stopped. At this point, he said he wondered why the police officers were behind him, and decided to place his backpack beside his car. He did this, he testified, because he believed the officers wanted to "shake [him] down" and "fight" with him. He testified that the officer repeatedly told him to get on the ground, despite his attempts to explain that he should not because of a previous surgery. He said the officer then hit him on the back with a baton and tackled him to the ground. One officer put him in a headlock, he said, and another

3

was on top of him. Kosi testified that at all times he obeyed traffic laws, and that

he never denied ownership of the backpack.

The police officers who testified at the hearing presented a

substantially different scenario. Maui Police Officer Joshua Mederros testified

that on November 21, 2003, he was driving with a field training officer when, at

about 2:00 p.m., a call came over the radio from dispatch regarding a reckless

driver on Honoapiilani Highway. The driver was headed northbound in a green

Honda Civic toward Lahaina in the Oluwalu area, passing vehicles in across the

double-solid, no-passing line as well as on the right-hand shoulder. The officer

then testified that a second call came over the radio, explaining that a person

driving behind the dangerous driver had called the police to tell them that the

suspect had just passed a police car driving in the opposite direction in the area

around Puamana Park. Officer Mederros identified the officer in the police car

that the suspect passed as Officer Ryan Pursley.

Officer Mederros testified that, after receiving this call, he pulled

over to the side of the highway to wait for the suspect to approach. There were no

opportunities for the suspect to have exited the highway between the last siting of

the suspect and Officer Mederros' position, he said. He stated that when he saw a

green Honda pass his car, he pulled onto the road and immediately activated his

4

lights and sirens in an attempt to stop the vehicle. He testified that he had not seen any similar looking green Honda cars on the road. The car did not stop, however, and continued driving north on the highway for about half a mile. At that point, the vehicle made a left on Prison Street and continued driving despite the lights and siren. The officer testified that he could see the driver of the vehicle, a male, rummaging around in the front seat area of the car. He testified that the vehicle then made another left turn from Prison Street onto Front Street. At this point, the officer's car was approximately 10 feet from the suspect's car. Officer Mederros stated that, when the suspect made this turn onto Front Street, he disregarded a stop sign and sped past children outside an elementary school.

The driver then made another left turn, from Front Street into a parking lot on Shaw Street. In the parking lot, the driver made a semi-circular right turn as he slowed down, and shortly thereafter he completely stopped the car in the corner of the parking lot. While following at about 10 feet away, Officer Mederros observed a small brown bag drop to the ground from the area of the driver's side door, he testified. He said that, from his vantage point on the side of the passenger's side door, he saw the bag fall underneath the vehicle and that the vehicle subsequently ran over it. He testified that there were no other persons nearby who could have dropped the bag, and that the bad was not there before the

5

suspect's car entered the parking lot. The vehicle finally stopped about 30 feet from the bag, he said.

Maui Police Officer Ryan Pursley also testified at the hearing. Officer Pursley testified that while he was driving in the area of Puamana Beach Park, he was informed that an anonymous caller had contacted the police on a cellular phone to explain that this caller was driving behind the reckless vehicle, and that both the caller and the reckless driver had passed a police car traveling in the opposite direction. He stated that he communicated with Officer Mederros after it passed him, and informed them of his position and direction. He testified that there were no points at which the suspect could have exited the highway within the tenth of a mile between his position and Officer Mederros' position. Moreover, he said that he saw no similar cars on the highway.

Officer Pursley explained that he joined the call at about 2:04 p.m., and met the officers at the parking lot after Defendant was stopped. While he was in the parking lot, two civilians presented him with a backpack, he said. Officer Mederros testified that this backpack was the bag he saw dropping from the driver's side of Defendant's car. Officer Pursley testified that he twice asked Defendant Kosi if the backpack was his, but that on both occasions Defendant denied ownership of the bag. He said that, after Defendant denied ownership of

6

the bag, the officers found that the bag contained a firearm, ammunition, crystal

methamphetamine, marijuana, and court documents bearing Defendant's name.

## DISCUSSION

Defendant argues that when an arrest or seizure is effectuated without

a warrant, the government bears the burden of proving through sworn testimony

that the action was legally justified based on the facts and circumstances known to

the arresting officers at the time. (Def. Mot. To Suppress at 4 citing Hayes v.

Florida, 470 U.S. 811 (1985); Brinegar v. United States, 338 U.S. 160, 175 (1949);

United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980).) Defendant maintains

that the government has shown neither probable cause for an arrest nor

justification for a Terry stop, because the officers did not observe any traffic

violations by Defendant, and Defendant's vehicle was a Honda Accord, while the

anonymous caller described a Honda Civic. Moreover, to rely on the anonymous

tip for as a basis for reasonable suspicion, Defendant argues that the government

must show specific accompanying indicia of reliability. (Def. Mot. To Suppress at

5 citing Florida v. J.L., 529 U.S. 266 (2000).)

At the outset, the Court finds that Defendant's version of events is not

credible. Defendant's story that he only placed the backpack outside of the car,

with the intention of retrieving it, because he believed the officers wanted to fight

with him, defies logic and the typical patterns of human behavior. Moreover, the
Court finds equally unconvincing Defendant's argument that he did not run the
stop sign and flee from the officer, but rather that he attempted to pull over so the
officer could pass – and then inexplicably continued to drive after the officer did
not in fact pass him. Likewise, the Court finds it implausible that Defendant did
not notice the police officer's lights and siren behind him until he had traveled
down Prison Street. Further, the Court does not believe other assertions by
Defendant, including his claim that he did not deny ownership of the backpack.
The officer's testimony in this regard was credible.

 The Court now turns to Defendant's legal arguments. The Fourth
Amendment to the United States Constitution establishes that the government may
not violate "the right of people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The
United States Supreme Court held in Terry v. Ohio, that an officer may, consistent
with the Fourth Amendment, conduct a brief, investigatory stop when the officer
has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. 1,
30 (1968). The standard of "reasonable suspicion" is a less stringent than that of
probable cause and requires considerably less than a showing of preponderance of
the evidence. Illinois v. Wardlow, 528 U.S. 119, 123-124 (2000). However, the

8

Fourth Amendment does require objective justification for making the stop. Id.; United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, the officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. Wardlow, 528 U.S. at 124.

Defendant correctly notes that an anonymous tip can only form the basis for reasonable suspicion if it is accompanied by specific indicia of reliability. Florida v. J.L., 529 U.S. 266, 270-271 (2000). However, in the instant case, the caller was describing his present sense impression of the allegedly reckless driver, and the officers were able to partially confirm the caller's account when they confirmed the location of the drivers as related to Officer Pursley. The Court finds that, under the circumstances, this was a sufficient indicator of reliability. Moreover, the caller described a particular make (Honda) and color of car (Green) in a specific location. The Court finds that the tip was sufficiently specific to enable the officer's to act on it and attempt to make an identification.

Defendant touts as evidence of bad faith the fact that the caller described the suspect's car as a green Honda Civic, while Defendant was pulled over while driving a green Honda Accord. The Court is not greatly impressed by this factual distinction. First, the Court recognizes that, as the officers were no doubt aware, lay-witnesses' tips are not always perfectly precise; the Court is not

convinced that, simply because the caller referred to the suspect's car as a green Honda Civic, this proves that the caller was not referring to Defendant's green Honda Accord. Second, given the relative positions of the police officer's car and Defendant's car, it would likely have been difficult for the officer to determine whether the car was a Honda Civic or a Honda Accord before initiating the traffic stop. Defendant was driving straight toward the officer's car, and thus the officer was initially unable to view the sides or rear of the car. This would have greatly obscured the officer's ability to observe the differences in silhouette and markings that would differentiate a green Honda Accord from a green Honda Civic.

Thus, the Court finds that the anonymous call does serve as a reasonable justification for an investigative stop. Moreover, the officers received additional reasonable justification to stop Defendant after he fled from them. The Supreme Court has held that flight alone may constitute reasonable justification for an investigative stop, depending on the circumstances. As the court explained:

> Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law

10

enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

<u>Wardlow</u>, 528 U.S. 119, 124-125 (2000).

Finally, the Court dismisses Defendant's argument that he did not abandon his backpack, and therefore the search of the backpack was unlawful. As aforementioned, the Court finds Defendant's factual scenario to be wholly unbelievable. Taking the officer's account to be true, the Court finds that Defendant clearly abandoned the backpack.

The warrantless searches of abandoned property are not prohibited by the Fourth Amendment. <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960). The Ninth Circuit has defined abandonment as occurring when a "person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." <u>United States v. Jackson</u>, 544 F.2d 407, 409 (9th Cir. 1976). This is primarily a question of intent, which can be proved through circumstantial evidence. <u>Id.</u> Denial of ownership and physical relinquishment of property are two factors that strongly weigh in favor of a finding of abandonment. <u>United States v. Nordling</u>, 804 F.2d 1466, 1469 (9th Cir. 1986). In the instant case, Defendant relinquished physical possession of the backpack

11

when he threw it from the window of his still-moving car. Defendant also denied

ownership of the backpack twice when questioned by officers. These facts are

sufficient to evidence a clear intent on the part of Defendant to abandon the

backpack.

Defendant attempts to rebut this fact with the argument that his

abandonment of the property was involuntary. Indeed, it is true that "an

abandonment that results from Fourth Amendment violation cannot be voluntary."

United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000). However, the Ninth

Circuit's holding that abandonment of property in response to a police

investigation does not automatically render the relinquishment involuntary.

United States v. Gilman, 684 F.2d 616, 620 (9th Cir. 1982). "There must be a

nexus between the allegedly unlawful police conduct and abandonment of

property if the challenged evidence is to be suppressed." Id. As this Court has

found that the officers' investigative stop did not violate Defendants' Fourth

Amendment rights, the Court cannot say that the abandonment of Defendant's

backpack occurred in response to any Fourth Amendment violation.

Thus, the Court finds that the officers had reasonable justification for

conducting an investigatory stop of Defendant, and that Defendant subsequently

abandoned his backpack, ending any Fourth Amendment rights against warrantless

searches and seizures that he would have regarding the backpack.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion

to Suppress Evidence.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii,     MAR 1 4 2005                .


_____

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE


United States of America v. Charles H. Kosi, Jr., CR. No. 03-00586 DAE;
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE