NO. 06-10423

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES H. KOSI, JR.,

Defendant-Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII
The Honorable David A. Ezra, United States District Judge
District Court Criminal Number CR-03-00586-DAE

## DEFENDANT-APPELLANT'S OPENING BRIEF

MARK R. ZENGER
Richards & Zenger, Attorneys at Law
A Law Corporation
3016 Umi St., Suite 212
Lihue, Hawaii 96766
Telephone: (808) 632-0723
Facsimile: (808) 632-0724

Attorney for Defendant-Appellant
CHARLES H. KOSI, JR.

**EXHIBIT D**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BAIL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE SEARCH AND SEIZURE OF
         APPELLANT'S BACKPACK . . . . . . . . . . . . . . . . . . . . . . . 8

    II.   THE INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    III.  APPELLANT'S LEGAL RESEARCH ON SEARCH AND
         SEIZURE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.  APPELLANT'S ATTORNEYS . . . . . . . . . . . . . . . . . . . . . 9

        A.   Attorney Domingo . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.   Attorney Healy . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.   Attorney Nishimura . . . . . . . . . . . . . . . . . . . . . . . . 10

    V.   THE MOTION TO SUPPRESS AND APPELLANT'S
         PLANS TO APPEAL IT . . . . . . . . . . . . . . . . . . . . . . . . . 10

    VI.  THE MEMORANDUM OF PLEA AGREEMENT . . . . . . . . 13

VII.    THE CHANGE OF PLEA HEARING ................. 18

VIII.    ATTORNEY NISHIMURA WITHDRAWS AS COUNSEL . 19

IX.    THE MOTION OF DEFENDANT CHARLES H.
KOSI, JR. TO WITHDRAW HIS GUILTY PLEA ......... 19

SUMMARY OF ARGUMENT ............................... 21

ARGUMENT ........................................... 22

I.    THE RECORD CONCLUSIVELY DOCUMENTS
THAT APPELLANT HAD ESTABLISHED FAIR
AND JUST REASONS FOR WITHDRAWING HIS
GUILTY PLEAS PRIOR TO SENTENCING ............. 22

    A.    Standard of Review ......................... 22

    B.    Argument ................................. 22

II.    THE CUMULATIVE RECORD OF GUILTY PLEA
AND OTHER PROCEEDINGS CLEARLY
DEMONSTRATES THAT APPELLANT RECEIVED
ERRONEOUS ADVICE AND INEFFECTIVE
ASSISTANCE FROM HIS LEGAL COUNSEL
DURING HIS ENTRY OF PLEA .................... 26

    A.    Standard of Review ......................... 26

    B.    Argument ................................. 27

CONCLUSION ......................................... 29

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES                                                    PAGE(S)

Chacon v. Wood,
36 F.3d 1459 (9th Cir. 1994) ...................................................... 26

Iaea v. Sunn,
800 F.2d 861 (9th Cir. 1986) ................................................... 26

Strickland v. Washington,
466 U.S. 668 (1984) ..........................................................21, 26

United States v. Birge,
723 F.2d 666, (9th Cir. 1984) ................................................ 27

United States v. Davis,
410 F.3d 1122 (9th Cir. 2005) ................................................22

United States v. Dayfield,
357 F.3d 1082 (9th Cir. 2004) ................................................ 27

United States v. Garcia,
401 F.3d 1008 (9th Cir. 2005) ................................................ 22

United States v. Ortego-Ascanio,
376 F.3d 879 (9th Cir. 2004) ............................................ 22, 26

United States v. Rubalcaba,
811 F.2d 491 (9th Cir. 1987) ..........................................21, 23, 27

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV (Sixth Amendment) .....................................27, passim

# TABLE OF AUTHORITIES
## (Continued)

**FEDERAL STATUTES**        **PAGE(S)**

U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

U.S.C. § 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

18 U.S.C. § 924 (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

18 U.S.C. § 924 ( c ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

18 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES**        **PAGE(S)**

Fed R.Crim.P. 11(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231, given that the government accused defendant-appellant Charles H. Kosi, Jr. of violating U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) all of which are criminal statutes. [Excerpts of Record (ER) at 1-3] The district court filed its written judgment – which is final and, thus, disposes of all of the parties' claims in this case – on June 13, 2006. [ER at 249-254]. Appellant timely filed a notice of appeal on June 23, 2006. [ER at 255-263] This Court has jurisdiction to review the district court's final judgment under 18 U.S.C. § 1291.

## BAIL STATUS

Appellant is not on bail. He is presently serving his sentence at the Federal Correctional Institution in Terra Haute, Indiana. His projected release date is March 13, 2014.

## STATEMENT OF THE ISSUES PRESENTED

1.    Did the District Court err in failing to allow Appellant to withdraw his guilty plea prior to sentencing where at the time of the guilty plea the facts and circumstances surrounding its entry failed to demonstrate that Appellant made the plea knowingly, voluntarily and intelligently?

2.    Did the District Court err in denying Appellant's pre-sentence Motion to Withdraw Guilty Plea where the cumulative record of the guilty plea and subsequent proceedings demonstrated that Appellant received erroneous advice from his then legal counsel and was denied the effective assistance of counsel?

## STATEMENT OF THE CASE

On December 17, 2003, the Government filed a two-count Indictment against Appellant.

Count 1 accused Appellant of violating of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in that on or about November 21, 2003 Appellant knowingly and intentionally possessed with intent to distribute more than five (5) grams of methamphetamine.

Count 2 accused Appellant of violating 18 U.S.C. §§ 922(g)(1) and 924 (a)(2) in that Appellant knowingly possessed a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year.

On October 22, 2004  Appellant filed a motion to suppress the methamphetamine and the firearm, as well as any other evidence that the government obtained as a result of the warrantless search.  Appellant asserted that the police officers who seized the evidence did not satisfy the Fourth Amendment's probable cause requirements.  [ER at 4 -14; DN at 43]   The district court conducted a suppression hearing on February 4, 2005.  [ER at 15-27]  The district court denied Appellant's motion to suppress on March 14, 2005 by written order.  [ER at 15-27; DN at 52]

4

On April 5, 2005 Appellant pled guilty to Count 1 before United States Magistrate Kevin S.C. Chang . [ER at 28-42]

On March 2, 2006 Appellant, prior to sentencing filed a motion to withdraw his guilty plea. [ER at 101- 136] Appellant asserted that his counsel at the time of his entry of plea had been ineffective and that he had not made his plea knowingly, intelligently and voluntarily.  [ER at 101- 136; 202-238 ] The district court denied Appellant's motion to withdraw his guilty plea by written order on April 11, 2006. [ER at 239-248: DN at 79]

On May 25, 2006, the district court sentenced Appellant to 142 month term of imprisonment on Count 1 of the Indictment, to be followed by a five year term of supervised release. [ER at 251]  The district court filed its written Judgment on June, 13, 2006. [ER at 249-254] Appellant filed his notice of appeal therefrom on June 23, 2006. [ER at 255- 262]

## STATEMENT OF THE FACTS

On November 21, 2003, the Maui Police Department ("MPD") purportedly received an anonymous phone call that a *"GREEN HONDA CIVIC"* had been driving erratically near the town of Olawaolu. [ER at 7]  The purported anonymous call specifically identified the car as a Honda CIVIC. MPD was not given a license plate number, the age of the car, any description of the driver, or any other identifying characteristics. [ER at 7]

Several minutes later, MPD officers saw a green Honda Accord, not a Civic, pass their location on the Honoapiilani Highway near Prison Street.  [ER at 7 and 8]  Appellant was the driver of the Accord.  He was driving it in a lawful and prudent manner. [ER at 8]  Moreover, the MPD Officers did not have any facts or possess any information to suggest that the Honda Accord Appellant was driving was the same Honda Civic that had been earlier described in the alleged anonymous telephone call. [ER at 8]

Despite not observing any traffic violations, erratic driving or furtive movements by the green Honda Accord, the MPD Officers thereafter left their location along the Honoapiilani Highway, and turned on their sirens and lights while following Appellant's car. [ER at 8]  The officers intended to stop the car and detain the driver, despite the fact that they had not witnessed it or its driver do anything wrong. [ER at 8]

6

When the MPD officers started to catch up to Appellant's car, he lawfully entered the left turn lane of Honoapiilani Highway to enter onto Prison Street. As Appellant turned onto Prison Street, he did so at about 30 miles per hour in the direction of Shaw Street, where Appellant's girlfriend worked. [ER at 8]  There, Appellant learned for the first time that the MPD officers were following him in their police vehicle and wanted to stop him and his green Honda Accord.

Right before he came to a stop in the Shaw Street parking lot, Appellant removed a backpack from his car and placed it in an area slightly away from where he had stopped his car. [ER at 8]  The MPD officers knew that the backpack belonged to Appellant because they saw him put it there. [ER at 8]

Appellant then parked his car and got out. As he was getting out, the MPD officers drew their guns and ordered him to "lay down on the ground." [ER at 8]  Appellant responded by asking the officers why they wanted him to get down on the ground in light of the fact that he had not done anything wrong. At the same time, Appellant got down on his knees. He kept asking the MPD officers why they were pointing their guns at him and ordering him to lay down when he had done nothing wrong. [ER at 8]  He also told them that they had no reason to make him lay down on the ground. The MPD officers responded to Appellant's questions and protestations by taking out their batons,

7

putting him in a headlock, physically forcing him down onto the pavement and arresting him. [ER at 8 and 9]

## I.    THE SEARCH AND SEIZURE OF APPELLANT'S BACKPACK

The officers later recovered and searched the backpack without a warrant and without Appellant's consent. [ER at 9]  The warrantless search of Appellant's backpack  resulted in the MPD officers finding and seizing from within it a distribution quantity of methamphetamine and a firearm.

## II.    THE INDICTMENT

On December 8, 2003, the Government charged Appellant via Criminal Complaint with a drug trafficking and a firearm charge. [DN at 1]   On December 17, 2003, a federal grand jury returned an indictment against Appellant for possession with intent to distribute "ice" and being a felon in possession of a firearm.    [ER at 1-3]  On December 9, 2003, U.S. Magistrate Barry M. Kurren   ordered that Appellant be held at the Federal Detention Center in Honolulu without bail pending trial. [DN at 5 and 6].

## III.    APPELLANT'S LEGAL RESEARCH ON SEARCH AND SEIZURE LAW

While detained at the FDC, Appellant had regular access to its law library  (the "FDC Law Library") [ER at 207].   All throughout his detention, Appellant conducted legal research.  He focused his attention and efforts on

examining whether the warrantless stop of his car, his arrest and the search and seizure of the drugs and the firearm from his backpack were legal or illegal.

Based upon his research at the FDC Library, Appellant soon formed the sincere, heartfelt belief that the MPD officers had on the night of November 21, 2003, violated his constitutional rights to be free from unlawful arrest, search, and seizure. Appellant was equally convinced that when it came time for him and his counsel to file a motion to suppress the evidence against him, he was going to prevail, that all of the evidence against him would therefore be ruled inadmissable and that all of the charges arising out of and connected with his November 21, 2003, arrest would in turn be dismissed and that he would soon regain his freedom [ER at 205-208].

## IV.    APPELLANT'S ATTORNEYS

### A.    Attorney Domingo

Appellant's first court-appointed attorney was Deputy Public Defender William Domingo. [ER at 205]  He and his office were appointed on or about by Magistrate Kurren on or about December 9, 2003. [DN at 5]. When Appellant told Attorney Domingo about his legal research and plans and desire to file a motion to suppress the evidence, their attorney-client relationship started to deteriorate. [ER at 206].  On April 26, 2004, Attorney Domingo filed a Motion to Withdraw as Counsel. [DN at 27].  Soon thereafter, U.S.

9

Magistrate Kevin S.C. Chang appointed Michael P. Healy, Esq. to be defense counsel for Appellant.  [ER at 206] and [DN at 29]

### B.    Attorney Healy

As was the case with Attorney Domingo, when Appellant told Attorney Healy about his legal research and plans and desire to file a motion to suppress the evidence, their attorney-client relationship, too, deteriorated.  [ER at 206]. They argued with each other about whether to file the motion to suppress. Appellant wanted it filed, and Attorney Healy did not want to do it.  On August 6, 2004, another Motion to Withdraw as Counsel was filed.  [ER at 206]  This time, Magistrate Kurren appointed Alvin P.K.K. Nishimura, Esq. to take over Appellant's defense from Attorney Healy on August 16, 2004.  [ER at 206] and [DN at 34]

### C.    Attorney Nishimura

At the outset, Attorney Nishimura did as Appellant wanted.  On October 22, 2004, he filed a pleading entitled "MOTION TO SUPPRESS EVIDENCE" [ER at 4 - 14].

## V.    THE MOTION TO SUPPRESS AND APPELLANT'S PLANS TO APPEAL IT

Appellant was sure that he was going to prevail and be freed from federal prison . [ER at 207]  The hearing on the motion to suppress was

10

conducted on February 4, 2005, before Judge David A. Ezra. [DN at 48] After

the hearing, Appellant remained confident that he was going to win. [ER at

207]. However, about six weeks later, he was proven wrong when Judge Ezra

issued an order on March 15, 2005, entitled "ORDER DENYING

DEFENDANT'S MOTION TO SUPPRESS" [ER at 15 - 27].

During a later hearing on the "MOTION OF DEFENDANT CHARLES

H. KOSI, JR. TO WITHDRAW HIS GUILTY PLEA" held on April 7, 2006,

Appellant testified as to what happened and what he wanted Attorney

Nishimura to do back in March 2005 in the wake of the adverse ruling on his

motion to suppress. On direct examination, he testified, in pertinent part, that:

> "Q.  Let me ask you a question. Was that - - your
>       suppression hearing litigated with (Assistant
>       United States Attorney) Porter and in front of
>       Judge Ezra?
>
> A.   Yes, it was matter - - yeah.
>
> Q.   And you received a denial of that - - an order
>       denying that motion, is that correct?
>
> A.   Yeah, it's about, about six weeks after that, that
>       day.
>
> Q.   All right.
>
> A.   And so I told him I wanted to, like, appeal my
>       case.
>
> Q.   Told who?

11

A.    To Alvin, that I wanted to appeal my case. And so he said that I'm going to lose my appeal. I'm going to lose my appeal because it's Judge Ezra and this and that and because of these things he was telling me. And I said: But I have an appeal case, you know what I mean. I supposed to have won this appeal - - this motion actually. So I felt really confident that I had an appeal - - this motion actually. So I really felt confident that I had an appeal case and I always wanted to take it to the appeals court. I didn't have a trial court, so I wanted to plead guilty, get it over with and then go to the next step. And so I said: Well, Latino, he - - he recommended working out a deal. And I said okay, that'll benefit me. So I asked him where was I in my - - my - - the chart thing, the category and the levels and stuff.

Q.    You talking about the United States Sentencing Guidelines chart?

A.    Yes. Yeah. And he didn't even know. And so I told him I wanted to, like, appeal my case. He told me I was at 25. And I said okay, because I plead out early, what happens next? He goes: you probably drop two levels to 20 - - twenty something. And so he never did go over that stuff with me, it was just verbally telling me all this. And so he said this and that, so he said he got a - - he's got a plea agreement with Mr. Wes Porter, and I was like: Okay. I can live with doing - - doing 8 years I guess, you know, I did two-and-a-half years down. I can live with that. And then I want to - - I'm still going to appeal my case - - if anything else."

\* \* \*

[ER at 207-208]

12

VI.    THE MEMORANDUM OF PLEA AGREEMENT

A few days after Judge Ezra issued the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS", Attorney Nishimura entered into plea negotiations with Wes Porter, the Assistant United States Attorney assigned to prosecute the case. [ER at 208]. Attorney Nishimura and AUSA Porter soon reached an agreement and reduced it to writing embodied in a document entitled "MEMORANDUM OF PLEA AGREEMENT." [ER at 28 - 42]. The "MEMORANDUM OF PLEA AGREEMENT" contained the following term and condition:

> "13.    The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742 (a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

> *    *    *

> b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack."

13

[ER at 35 - 36].

At no time before, during or after the plea negotiations between Attorney Nishimura and AUSA Porter or the drafting of the 14-page long "MEMORANDUM OF PLEA AGREEMENT" did Attorney Nishimura ever discuss with or get authority from Appellant to affect Appellant's rights to appeal anything in the case to any appellate court. [ER at 205 - 214].

On March 23, 2005, the district court set a hearing on the "MOTION FOR WITHDRAWAL OF GUILTY PLEA AND TO PLEAD ANEW" to be heard on April 5, 2005, before Magistrate Chang. At the time that the hearing was set, Attorney Nishimura had still not shown or provided Appellant a copy of the "MEMORANDUM OF PLEA AGREEMENT," despite repeated requests from Appellant that he do so. [ER at 208 and 210-211] Appellant's requests to Attorney Nishimura to show or provide him with a copy of the "MEMORANDUM OF PLEA AGREEMENT," in advance of the scheduled April 5, 2005, date for the "MOTION FOR WITHDRAWAL OF GUILTY PLEA AND TO PLEAD ANEW" continued after March 23, 2005, but Attorney Nishimura continued to ignore them. [ER at 208 and 210-211]

During the hearing on the "MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW HIS GUILTY PLEA" held on April 7, 2006, Appellant testified, in pertinent part, that:

14

* * *

"And so we worked up this thing and he said he's got the - - plea agreement. And I swear to God, he told me he had the plea agreement, he's going to bring it to me, he's going to send it to me. He never did. For - - for weeks and weeks and weeks, all the way up to the day that I got to this courtroom.

Q.    Is that April 5, 2005?

A.    April 5th, the morning. And I - - under oath, he never showed me the plea agreement until 10 minutes 'til I came into the other courtroom and stood there and he said: Okay, this is the plea agreement. That's the only time I touched it, was that day, that morning.

And then he - - and I was scared. I was, like, okay, yeah, yeah, yeah. So I said "yeah" to - - I could have said 'yeah' to whatever, you know. But I did say "yeah," and I'm not going to lie on - - I was on - - you know, I'm under oath and what I said on record that day can cause me perjury. So I'm going to say "yeah" to a lot of things, but I did not understand everything.

Q.    Let me go back. When you say the court and you said yes, are you talking about your sentencing hearing in front of Judge Magistrate (Kevin Chang)?

A.    Yeah. Yes, I am.

Q.    All right.

A.    And so basically - -

Q.    I'm sorry, change of plea hearing.

15

A.    Yeah.

Q.    Excuse me.  I'm sorry, Your Honor.

THE COURT:    Plea colloquy

MR. ZENGER:    Yes.

THE WITNESS:    Didn't get sentenced yet. So, you know, I mean, I don't want to get perjured, I'm not trying to stall the court's time.  I just wanted to plead guilty and preserve my rights to appeal. That's the only time I saw the plea agreement was 10 minutes before coming into that - - the Court that day.  And yes, I did sign it and yes, I said a lot of stuff, but I took a - - I took some bad advice and I regret that."

[ER at 208-210]

Under cross-examination by AUSA Porter during the hearing on the

"MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW HIS

GUILTY PLEA" Appellant testified about the limited opportunity that Attorney

Nishimura gave him to observe the  "MEMORANDUM OF PLEA

AGREEMENT," in advance "MOTION FOR WITHDRAWAL OF GUILTY

PLEA AND TO PLEAD ANEW" on April 5, 2005:

"Q:    Did you also see attached to that opposition the declaration from Mr. Nishimura, your previous attorney?

16

A:    Yeah, I read his declaration.

Q:    Okay. And do you recall reading in there that he says that he went over the plea agreement with you and that you understood the provisions?

A:    I read that part. Going over it with me was 10 minutes before going in, through the mesh wire fence, that's what he told me, he said,: Well, I got the plea agreement right here and basically what you're going to do is this, this and that. It's you know, stuff and we're going to sign this and we'll be out of there. And that's what happened. I never possessed it or touched it or really went over it. He just showed me the stuff through the mesh wire fence.

Q:    Okay. Do you recall, even though he went over it in the way you're talking about, did he talk about that part of the plea agreement is that you waive your rights to appeal; did that - - did that come up in that discussion?

A:    Not - - not that I can remember. He said something about a gun and something about - - I don't know if he - - if you know what I'm talking about. But he said: The only thing that this - - this plea agreement has been different from the one he told me about is that something about a gun revised or something. And that's it. He mentioned a gun being revised. I never understood that, what he meant about that. But after - - from doing research on myself, my case, I come to find out that that means that I get charged with the gun anyway. So . . .

Q:    Okay. Let me see if I can - - do you know that part of the plea agreement, whether it's from your discussions with Mr. Nishimura or actually being

17

at that hearing downstairs, you know that part of it is that I could have charged you with another offense that I did not charge you with, that I was foregoing the opportunity to charge you with another offense, did you understand that?

A:    You mean the gun charge?

Q:    Yeah.  But it's a particular type of gun charge called a 924 ( c ), do you ever recall those numbers being talked about with Mr. Nishimura?

A:    Not really, no.

[ER at 212-214]

## VII.    THE CHANGE OF PLEA HEARING

After having seen the "MEMORANDUM OF PLEA AGREEMENT" for only a few minutes while separated from it and Attorney Nishimura by glass and wire mesh in the confines of the U.S. Marshal's prison facility at the courthouse, Appellant attended his  "MOTION FOR WITHDRAWAL OF GUILTY PLEA AND TO PLEAD ANEW."   During the entire colloquy, Appellant was "scared" and said "yeah" to a lot of things that Magistrate Chang said to him that Appellant simply did not understand.  [ER at 209]   When the colloquy was over, Appellant did not understand that under the terms and conditions of the "MEMORANDUM OF PLEA AGREEMENT" and the answers that he had just given Magistrate Chang he had, on the face of it, seemingly just waived his right to appeal the

"ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" to the Ninth Circuit Court of Appeals. [ER at 213 - 216].

## VIII. ATTORNEY NISHIMURA WITHDRAWS AS COUNSEL

In the weeks and months after the April 5, 2005, hearing on the "MOTION FOR WITHDRAWAL OF GUILTY PLEA AND TO PLEAD ANEW" the attorney-client relationship between Appellant and Attorney Nishimura further deteriorated. Appellant, who still thought and believed that he had the right to appeal the "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS", instructed Attorney Nishimura to file a motion to withdraw his guilty plea. Instead, and about six months after "MOTION FOR WITHDRAWAL OF GUILTY PLEA AND TO PLEAD ANEW," Attorney Nishimura filed on October 27, 2005, the "MOTION TO WITHDRAW AS COUNSEL AND HAVE NEW COUNSEL APPOINTED." [ER at 66-71] On November, 2, 2005, United States Magistrate Judge Leslie Kobayashi appointed Mark R. Zenger, Esq. To replace Attorney Nishimura as Appellant's defense counsel. [DN at 63 and 64].

## IX.  THE MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW HIS GUILTY PLEA

On March 2, 2006, Attorney Zenger filed the "MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW HIS GUILTY PLEA" on Appellant's behalf. [ER at 101 - 136] On March 28, 2006, the Government filed the UNITED

STATES' OPPOSITION TO DEFENDANT CHARLES H. KOSI, JR.'S

MOTION TO WITHDRAW [HIS] GUILTY PLEA [ER at 137- 201] On April 7,

2006, the hearing on the "MOTION OF DEFENDANT CHARLES H. KOSI, JR.

TO WITHDRAW HIS GUILTY PLEA" was conducted with Judge Ezra presiding.

[ER at 202 - 239]

On April 11, 2006, Judge Ezra issued the "ORDER DENYING

DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA" [ER at 239 - 248],

notwithstanding the fact that the evidence and the record clearly showed that at the

time that Appellant withdrew his plea of not guilty and plead anew before

Magistrate Chang on April 5, 2005, Appellant believed that his rights to appeal

Judge Ezra's adverse ruling on Appellant's "MOTION TO SUPPRESS

EVIDENCE" to the Ninth Circuit Court of Appeals thereafter remained intact.

The April 11, 2006, "ORDER DENYING DEFENDANT'S MOTION TO

WITHDRAW GUILTY PLEA" forms the primary basis for the filing of this

appeal. [ER at 239 - 248]

## SUMMARY OF ARGUMENT

First, the District Court for the District of Hawaii should have allowed Appellant to withdraw his guilty plea prior to sentencing, and the lower court clearly abused its discretion in refusing to allow him to do so. It also should have found that the facts and circumstances surrounding the entry of his guilty plea showed that he did not make said plea knowingly, intelligently and voluntarily and that his plea was given through "ignorance, fear and inadvertence." United States v. Rubalcaba, 811 F.2d 491, 493 (9th Cir. 1987).

Second, Attorney Nishimura's performance denied Appellant the effective assistance of counsel, particularly by Attorney Nishimura having entered into plea negotiations with the Government to waive Appellant's constitutional right to appeal the district court's denial of the motion to suppress evidence without Appellant's knowledge or consent, by failing to fully and fairly disclose to Appellant the terms and conditions of the plea agreement and concomitant written Memorandum of Plea Agreement, and by subsequently failing to file a motion to withdraw Appellant's April 5, 2005 guilty plea when instructed by Appellant to do so. Strickland v. Washington, 466 U.S. 668 (1984).

21

<u>ARGUMENT</u>

I.    THE RECORD CONCLUSIVELY DOCUMENTS THAT
      APPELLANT HAD ESTABLISHED FAIR AND JUST
      REASONS FOR WITHDRAWING HIS GUILTY PLEAS
      PRIOR TO SENTENCING.

A.    Standard of Review.

Denial of a motion to withdraw a guilty plea pre-sentence is reviewed for

abuse of discretion, and no showing must be made that the plea was invalid in any

way. United States v. Ortego-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004); United

States v. Garcia, 401 F.3d 1008, 1011 (9th Cir. 2005); United States v. Davis, 410

F.3d 1122, 1126 (9th Cir. 2005).  A court abuses its discretion when it rests its

decision on an inaccurate view of the law. Garcia, 401 F.3d 1011.

B. Argument.

Although the Defendant has the burden of demonstrating a ""fair and just

reason" for withdrawing a plea when the motion is made pre-sentence, Fed

R.Crim.P. 11(d)(2)(B), that standard is applied liberally; ""[f]air and just reasons

for withdrawal include inadequate Rule 11 colloquies, newly discovered evidence,

intervening circumstances or any other reason for withdrawing the plea that did

not exist when the defendant entered his plea." United States v. Ortego-Ascanio,

376 F.3d 879, 883. [Emphasis added]. A court ""[s]hall vacate a guilty plea shown

22

to have been unfairly obtained or given through ignorance, fear or inadvertence."
United States v. Rubalcaba, 811 F.2d 491, 493 (9th Cir. 1987).

 Judge Ezra rejected the defense arguments that Appellant was only agreeing
to enter his plea if the underlying plea agreement did not in any way affect
Appellant's rights to appeal the denial of his motion to suppress evidence to the
federal appellate courts without making sufficient analysis to determine if
Appellant had been confused, mislead by counsel, or if the plea had been unfairly
obtained or given through ignorance, fear or inadvertence."   United States v.
Rubalcaba, 811 F.2d 491, 493 (9th Cir. 1987).

 The facts of this case clearly show that from the very beginning of this
case Appellant wanted to enforce his rights to be free from unreasonable search
and seizure as he perceived them to be, no matter what.   When he was first
stopped by MPD back in  November 2003, Appellant always believed that the
warrantless stop of his car, his arrest and the search and seizure of the drugs and
the firearm from his backpack were illegal and "fruit of the poisonous tree".

 Appellant tirelessly researched the suppression issues at the FDC Library.
He always had the sincere, heartfelt belief that the MPD officers violated his
constitutional rights to be free from unlawful arrest, search, and seizure and knew
that he had to find an attorney that would file a motion to suppress the evidence
against him.   All through the year 2004 and on into 2005, Appellant clearly

believed that he was going to win his motion to suppress and that all of the charges arising out of and connected with his indictment would be dismissed. [ER at 205-208]

Appellant fired two attorneys because, for reasons of their own, neither of them wanted to litigate his motion to suppress. When in August 2004 Attorney Nishimura was appointed to Appellant's case, the first thing that Appellant did was to tell him how strong his motion to suppress was and that he wanted it filed and litigated, no matter what. Judge Ezra's issuance of the March 15, 2005, "ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS" [ER at 15 - 27] did nothing to change Appellant's view of the correctness of his long-held position that the search and seizure were illegal.

Having been denied by Judge Ezra, the entirety of Appellant's hopes, focus and attention immediately shifted toward the Ninth Circuit Court of Appeals to seek enforcement of his constitutional rights. When viewed in this light, it is patently unreasonable for any trier of fact to conclude that Appellant would ever, under any circumstances, authorize Attorney Nishimura or anyone else to enter into a plea agreement with the Government whereby Appellant would waive his rights to appeal Judge Ezra's order on the motion to suppress. That simply did not happen. And yet, Judge Ezra, in his April 11, 2006, "ORDER DENYING

24

DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA" nonetheless found that it did [ER at 239 - 248].

Likewise, Appellant's viewing of a complex document like the 14-page "MEMORANDUM OF PLEA AGREEMENT" for just ten minutes through a screen window during a single attorney-client meeting while in a prison interview room is clearly not enough time and the wrong place and setting for Appellant, only an General Educational Certificate ("GED") reading background [ER at 73] to have any remotely meaningful level of understanding of the various terms and conditions of that document. Those facts notwithstanding, the district court still found that Appellant fully understood all of the terms and conditions of the "MEMORANDUM OF PLEA AGREEMENT" when before he entered his plea before Judge Chang on April 5, 2005. This finding, too, defies all notions of reason and logic. There is simply no way that Appellant knowingly, intelligently and voluntarily waived his right to appeal the motion to suppress before Appellant walked into Judge Chang's courtroom on the morning of April 5, 2005.

Moreover, the mere fact that Judge Chang gave a colloquy that was admittedly proper, given the fact that Appellant was understandably "scared" and said "yeah" to a lot of things that Magistrate Chang said did not serve to change in any way Appellant's level of understanding of what he was pleading to in general and the fact that he was unknowingly mouthing the waiver of right to appeal his

25

right to appeal the denial of his motion to suppress to the Ninth Circuit Court of Appeals.

## II.    THE CUMULATIVE RECORD OF GUILTY PLEA AND OTHER PROCEEDINGS CLEARLY DEMONSTRATES THAT APPELLANT RECEIVED ERRONEOUS ADVICE AND INEFFECTIVE ASSISTANCE FROM HIS LEGAL COUNSEL DURING HIS ENTRY OF PLEA

### A.    Standard of Review.

When alleging ineffective assistance of counsel, the inquiry remains whether the defendant had shown a fair and just reason for withdrawing his plea even if it was otherwise valid. United States v. Ruiz-Ortiz, 830 F.2d 1067, 1068 (9th Cir. 1987); United States v. Ortego-Ascanio, 376 F.3d 879, 884-85. A defendant may satisfy this standard by showing that defense counsel grossly mischaracterized the likely outcome. Chacon v. Wood, 36 F.3d 1459-1464 (9th Cir. 1994); Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986); United States v. Michlin, 34 F.3d 896, 899 (9th Cir. 1994).

The defendant may also show deficient performance by his counsel by meeting the standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984). This is a mixed question of law and fact reviewed de novo. Iaea, 800 at 864. Whether the defendant subjectively understood the consequences of his guilty plea is an underlying factual issue. Iaea, 800 F.2d at 864. Normally ineffectiveness of counsel claims cannot be raised without the development of

26

facts outside of the original record, <u>United States v. Birge</u>, 723 F.2d 666, 670 (9th Cir. 1984), but this Court may review the same where the record is sufficiently developed to allow reliable review or where legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel. <u>United States v. Dayfield</u>, 357 F.3d 1082, 1095 (9th Cir. 2004).

**B.    Argument.**

This Court need not remand this case for further district court proceedings and findings, as it can only reach one conclusion from the record:  Appellant had been induced, probably through a combination of Attorney Nishimura's neglect and well-meaning but misplaced desire to see Appellant be sentenced to a shorter time in prison by getting rid of the threatened 18 U.S.C. § 924 ( c ) firearm charge, to enter his plea with the expectation that his right to appeal the "ORDER DENYING APPELLANT'S MOTION TO SUPPRESS" remained intact after the entry of plea.  Appellant's justification for seeking to withdraw his pre-sentence plea was based cumulatively on: (i) his own objectively reasonable expectations that he would be able to appeal the "ORDER DENYING APPELLANT'S MOTION TO SUPPRESS" and (ii) Attorney Nishimura's  demonstrated lack of effective assistance.  Together, these justifications fall within the heartland of this Circuit's requirements set forth in  <u>United States v. Rubalcaba</u>, 811 F.2d 491, 493 (9th Cir. 1987) of "ignorance, fear or inadvertence," on Appellant's part to

27

mandate the withdrawal of his guilty plea in this case. Attorney Nishimura subsequently compounded his ineffectiveness when in the summer or fall of 2005 he failed and refused to follow Appellant's demand that Attorney Nishimura file a motion with the district court to have Appellant's April 5, 2005 guilty plea withdrawn so that Appellant could do what he had wanted to do ever since March 15, 2005, i.e., appeal Judge Ezra's adverse ruling on the motion to suppress the evidence seized from Appellant's backpack. [ER at 15-27; and 66-71]

The cumulative record of the entry of the guilty plea and subsequent proceedings clearly shows that Appellant received erroneous evidence and ineffective assistance from Attorney Nishimura before, during and after Appellant's April 5, 2005 entry of guilty plea before Magistrate Chang, and that Judge Ezra should therefore have allowed Appellant to withdraw it upon his filing of the "MOTION OF DEFENDANT CHARLES H. KOSI, JR. TO WITHDRAW HIS GUILTY PLEA filed on March 2, 2006, by and through Appellant's replacement counsel. [ER at 101- 136; DN at 68]

## CONCLUSION

In accord with the foregoing, defendant-appellant urges this Court to reverse his conviction with an order that the district court allow him to withdraw his prior plea of guilt and remand for further appropriate proceedings.

DATED:   Lihue, Hawaii, October 13, 2006.

MARK R. ZENGER
Attorney for Defendant-Appellant
CHARLES H. KOSI, JR.

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6 of the Rules of this Court, counsel for the appellant respectfully inform the Court that this case has not previously been before this Court and that counsel for the appellant is unaware of any related cases currently pending before this Court.

DATED:   Lihue, Hawaii, October 13, 2006.

MARK R. ZENGER
Attorney for Defendant-Appellant
CHARLES H. KOSI, JR.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this principal brief complies with Fed. R. App. P. 32(a)(7)(B)(i), in that it is proportionately spaced in 14-point Times New Roman typeface and contains less than 14,000 words; specifically, it contains 8,750 words.

DATED:   Lihue, Hawaii, October 13, 2006.


MARK R. ZENGER
Attorney for Defendant-Appellant
CHARLES H. KOSI, JR.

## CERTIFICATE OF SERVICE

I, MARK R. ZENGER, hereby certify that, on October 13, 2006, a true and

exact copy of the foregoing document was duly mailed to:

DARREN W. K. CHING, ESQ.
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Boulevard, Room 6100
Honolulu, Hawaii  96813

Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA

DATED:  Lihue, Hawaii, October 13, 2006.

MARK R. ZENGER
Attorney for Defendant-Appellant
CHARLES H. KOSI, JR.

Case 1:03-cr-00586-DAE    Document 92    Filed 05/16/2007    Page 1 of 1

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>    v.<br><br>CHARLES H. KOSI, JR.,<br><br>        Defendant - Appellant. | No.  06-10423<br>D.C. No.  CR-03-00586-DAE<br><br><br>**JUDGMENT** |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 1 6 2007

at 4 o'clock and 30 min. P M
SUE BEITIA, CLERK

Appeal from the United States District Court for the District of Hawaii (Honolulu).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District of Hawaii (Honolulu) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 04/20/07

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

MAY 1 4 2007

by:
Deputy Clerk

**FILED**

NOT FOR PUBLICATION

APR 20 2007

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS
DISTRICT OF HAWAII

FOR THE NINTH CIRCUIT

MAY 16 2007

at 4 o'clock and 30 min. P M
SUE BEITIA, CLERK

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

CHARLES H. KOSI, JR.,

    Defendant - Appellant.

No. 06-10423

D.C. No. CR-03-00586-DAE

MEMORANDUM[*]

---

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Submitted April 16, 2007[**]

Before: O'SCANNLAIN, CLIFTON, and BEA, Circuit Judges.

    Charles H. Kosi, Jr., appeals from the district court's denial of his motion to

withdraw his guilty-plea conviction for possession with intent to distribute

methamphetamine, in violation of 8 U.S.C. § 841(a)(1). We have jurisdiction

under 28 U.S.C. § 1291, and we affirm.

---

    [*]    This disposition is not appropriate for publication and is not
precedent except as provided by 9th Cir. R. 36-3.

    [**]    This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

Although appellee contends Kosi waived his right to appeal, the appeal waiver in the plea agreement does not encompass the issues raised in this appeal. *See United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005).

Kosi contends the district court abused its discretion by denying his motion to withdraw the guilty plea. *See United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). We find no such abuse, because the thorough plea colloquy demonstrates that the guilty plea was knowing and voluntary. *See* Fed. R. Crim. P. 11; *United States v. Vonn*, 535 U.S. 55, 58 (2002) (explaining that Rule 11 ensures that a guilty plea is knowing and voluntary). We decline to address Kosi's challenge to the effectiveness of defense counsel on direct appeal. *See Jeronimo*, 398 F.3d at 1155.[1]

**AFFIRMED.**

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

MAY 1 4 2007

by: _____
Deputy Clerk

---

[1] We express no opinion on how Kosi's appeal waiver might affect any collateral attack of his conviction and sentence. *See Jeronimo*, 398 F.3d at 1156 n.4.

2